RILEY M. CALVERT v. N. B. PEARCE ET AL.

**Covenants—Bond to Commonwealth for Benefit of Minor Heirs—Sales.**

The entering into a covenant to the Commonwealth, by a guardian desiring the sale of property belonging to minors, with security stipulating for the benefit of the infant heirs, a faithful performance of his duties as guardian, and that he would perform the orders of the court, is essentially and lawfully in every legal sense, a bond to such minor heirs and wards separately and collectively.

**Married Women—Right to Sell Property When of Age.**

A married woman of twenty-one years of age or older, has the right to sell her interest in property descending to her, without a decree of court.

**Bond—Sale of Property by Court Without Reinvestment.**

When a married woman, over 21 years of age, desires a sale of an inheritance, by order of court, without a reinvestment thereof, but the fund to be placed under the control of her husband, without bond, she will be estopped from attacking the sale thereafter, especially when she had joined her husband in a subsequent confirmation of the title.

APPEAL FROM CALDWELL CIRCUIT COURT.

May 26, 1868.

OPINION OF THE COURT BY JUDGE WILLIAMS:

Calvert is seeking to reverse a judgment dismissing his petition to set aside a sale of purchase by him of two slaves made under a decretal order of the Caldwell circuit court on the petition of James M. Pearce in his own right and as guardian for his minor sister, Cecelia J. and Codelia R. Pearce, Nicholas B. Pearce and N. H. Baily, the husband of the defendant Mary A. Baily. It appears from the petition, answer, commissioner's report, &c.., that Allen Pearce and his wife, Mary R. Pearce R, had wards and defendant Mrs. Mary A. Baily, as their only children and heirs-at-law.

That the estate sought to be sold had descended to them from their deceased father and consisted of 200 acres of land worth $3,000, 9 slaves worth $5,800, and assets in the guardian's hands of $800, rent of land worth annually $100, hire of slaves worth

annually $420. That Baily and wife were non-residents of Kentucky, and that the answer praying a sale of her interest in the real estate and slaves, and that the same be invested in land and slaves for her, and that her husband be appointed a trustee for her to invest said funds without bond, and she assented to said answer upon privy examination.

Baily and wife were then living in Iowa and whilst the formal prayer is for a reinvestment in land and slaves, the main object was to get the land and slaves converted into money and it placed under her husband's control.

The sale and purchase was made December 27, 1860 and this petition assailing it filed May 2, 1862, and sets up as the only ground for relief, unsoundness of the slave Martha, when the commissioner making the sale recommended her to be sound and so did James M. Pearce, the guardian, and himself an heir, the latter knowing she was unsound at the time.

The defendants answer denying any representations as to the health and denying the unsoundness of the negro, at the time of the sale, and averring that the plaintiff was himself well acquainted with her.

Subsequently an amended petition was filed setting up various informalities in the proceedings and obtaining the order of sale.

Subsequently, in June, 1864, the administrator of James M. Pearce, who had died, and his heirs by their guardian, the other heirs of Allen Pearce, except Mrs. Baily and N. H. Baily filed an amended petition to which Mrs. Baily was defendant, the object of which was to confirm the sale of said property averring that it was not only to their interest to have the sale confirmed, but ruinous not to do so.

Afterwards N. H. Baily and wife and D. J. Baily and wife, she being the Cordelia R. Pearce, tendered said Calvert a deed of confirmation. The court confirmed the original sale and dismissed Calvert's petition. It is now insisted that as there was averment in the petition for a sale, that the slaves were not susceptible of a division in kind, that therefore the sale could only be authorized under article 3, chap. 86, Rev. Stat. 2 Vol. 309, and the amendments thereto, and that it was essential to the validity of a sale thereunder that a covenant to each minor should have been entered into by their guardian with security, and that a covenant to the Commonwealth by the guardian with security stipulating, for the benefit of the infant heirs of Allen Pearce,

a faithful performance of his duties as guardian and that he will perform the orders of the court, is not sufficient. But we think such a covenant is essentially and lawfully in every legal sense, a bond to such minor heirs and wards separately and collectively, and especially would we hesitate to regard such a bond as insufficient to the detriment of the beneficiaries, either at the instance of a purchaser or an obligor therein. It is also insisted that as Mrs. Mary A. Baily asked for a reinvestment of her part, to be derived from the sale, in land and slaves, that though she did request her husband to be appointed her trustee and that he should not be required to give bond, still this did not authorize a sale without such bond. In response to this position it may be said that the situation of the parties, her residence then in a free state, and the fact that she desired the funds placed under the control of her husband, indicates her real object as being inconsistent with that statement of the answer. It is very certain at any rate, that she did not desire the court to make the investment, and we are not prepared to say regarding the facts, her situation and her objects, that her case is not within the spirit and provisions of section 540 Civil Code, which renders a bond unnecessary when she is sane and over the age of 21 years, and does not seek a reinvestment. But, however, this may be, it is certain that she and her husband could have sold and conveyed her interest in these slaves without a decree of court, and as that could have been done, we apprehend her consent to the sale on privy examination and the asking that her funds be paid over to the husband without requiring a bond, would bar her and her heirs from any recovery of the slaves, and, therefore, the judgment and sale could not be regarded as a nullity, and more especially as she joined her husband in a subsequent confirmation of the title. And though the negro woman was then dead still this would not only confirm the title to the surviving slave, but so far, as to the dead one, that no recovery from Calvert for the services of such slave could be recovered. Calvert has gotten all he bargained for, in the purchase, the subsequent sickness and death of one of the slaves, and the freedom of the other by the subsequent amendment to the United States Constitution, cannot alter the legal rights of the parties. It is an unfortunate case wherein some innocent party must suffer. Calvert by his own voluntary act took upon himself the hazard of future contingencies and he must abide the loss. The defense of fraud and

unsoundness is not sustained by the evidence, nor do we understand that it is seriously insisted on. It is not conceded by appellee, in their amended petition, that there were such irregularities as would render the decree of the sale void, nor are we prepared to say so, even without the aid of the subsequent proceeding, but it is very certain that with them the court properly confirmed the sale.

Hence the judgment is affirmed.

*Marble, for appellant.*

*Pepper, for appellee.*

